NORMA STATE BANK, NORMA, NORTH DAKOTA, a Corporation, Respondent, v. AMOS MELIN and Isaac Melin, Co-partners as Melin Bros., Appellants.

(215 N. W. 865.)

**Waiver — note as collateral security — conditional delivery of note waived.**
> Where the defense of conditional delivery is interposed in an action on a promissory note, and it appears that the maker gave the note for stock in a corporation thereafter to be organized, and it further appears that there was an organization, at which the maker of the note was elected secretary, and thereafter he participated in the invoicing of a stock of goods which was purchased by said organization, paid for with promissory notes and stock notes given as collateral security including the one in suit, all with the knowledge and consent of the maker of the note, if the note was delivered conditionally such condition was waived by action of the defendant.

Opinion filed November 4, 1927.

Corporations, 14 C. J. § 846 p. 567 n. 10.

Appeal from the District Court, *Kneeshaw, J.*
Affirmed.

*E. R. Sinkler* and *G. O. Brekke,* for appellants.

*P. M. Clark,* for respondent.

BURKE, J.   In the fall of 1920, one W. E. Shortridge owned and was operating a general store at Norma, North Dakota, and contracted with the Northwestern Co-operative League of Minneapolis to organize a co-operative store on the Rochdale plan at Norma, and take over his stock of goods and fixtures.   Accordingly the Northwestern Co-operative League of Minneapolis sent one L. R. Gerard who circulated among the farmers around Norma an agreement as follows:

"The undersigned, believing that a co-operative store and shipping company on the Rochdale plan would be of great benefit to the people of Norma, North Dakota and vicinity, do hereby subscribe for the number of two hundred dollars ($200) shares set opposite my name, of the capital stock of such a company now being organized in Norma, North Dakota.

"I also hereby agree: 1st, to assist in incorporating the said company as soon as possible according to the law of North Dakota; 2nd, to settle for said share by cash or note as soon as company is organized, and also to pay one membership fee of $5 of which as much as necessary may be used for organizing expenses; 3rd, that the business and property of W. E. Shortridge shall be taken over according to the proposal hereto attached; 4th, that said proposal is hereby accepted by me."

The proposal to take over the business and property of the said W. E. Shortridge attached to the document and accepted by the signers, is as follows, viz.:

### Merchant's Proposal to People.

To the people of Norma, North Dakota and vicinity:

Believing that co-operative buying and selling on the Rochdale plan is the most just way of doing business, I hereby make the following proposition, viz.:

1st. As soon as approximately *four thousand dollars* ($4,000). of capital stock in shares of $200 each, has been subscribed for, and a co-operative company has been incorporated in accordance with the

laws of this state, *I* agree to turn over to said company, *my* entire stock of Merchandise, Fixtures, and unexpired fire insurance policies.

2nd. *I* also offer *my* store building ———— in this proposal, provided at least $3,500 is subscribed and settled for to apply on same, and agree to take security on said real estate for any balance due *me*.

3rd. An invoice of said stock shall be taken by two persons, one chosen by the president of the co-operative company, and one by me, and the prices allowed for said merchandise shall be on the basis of wholesale value. The fixtures and such goods as are damaged, or shop-worn, or for any other reason unsalable at regular prices, shall be appraised by the two persons so chosen. In case of any items on which they cannot agree, they to choose a third party. Value of Real Estate shall be determined by competent appraisers chosen in same manner as for stock and fixtures.

4th. I agree to give a clear bill of sale of the merchandise and fixtures, and warranty deed of the real estate, and settlement for same shall be made at once by the directors of said company as follows, to-wit:—*I am* to receive in cash and share notes approved by me such portion of the proceeds of the shares of stock sold and settled for as shall equal the agreed value of the said property. If there remains any balance due *me* upon said merchandise, fixtures and insurance, I agree to take a promissory note executed by the directors of said company for such balance. Any balance due on real estate to be settled as per paragraph 2nd.

5th. The membership fees as collected by organizer shall be turned over to me from which as much as necessary may be used for organizing expenses. Any balance remaining at the time of the transfer of my stocks shall be turned over to the co-operative company with a true statement of the expenses incurred. It is agreed that whatever money has been advanced by me for organizing expenses shall be returned by the new company at the time of said transfer.

6th.

7th. I agree not to dispose of any merchandise by special or reduction sale methods while this company is being organized.

8th. No member of this company shall hold more than $1,000 in shares nor have more than one vote.

9th. I also agree to take $ . . . . in said company.

IN WITNESS WHEREOF, I have hereunto set my hand this 20th day of October, 1920 at Norma, county of . · . . and state of North Dakota.

W. E. Shortridge.

In the latter part of October, 1920, there was a meeting of the signers held in Norma, at which meeting, Fred Tunnell, Sr. was elected president and Amos V. Melin, one of the defendants, was elected secretary, B. J. Whitman vice president, and Jens Nelson treasurer, of the Peoples Co-operative Mercantile Company. They elected as a board of directors Fred Tunnell, Jens Nelson, B. J. Whitman, Amos Melin, and Mr. Carl Krist. They adopted by-laws and the name "Peoples Co-operative Mercantile Company." It appears in the testimony of Mr. Shortridge and is not disputed, that at this meeting the time to take over the store was discussed Shortridge stated that, "One of the members, I believe, made the motion that the business be not taken over until there were 100 subscribers, that would make a capital of $20,000. There was an amendment of the resolution made finally, that the time of commencing business be left to the discretion of the directors. It was finally left to the board of directors."

Mr. Tunnell, president, Mr. Amos Melin, secretary and Mr. Whitman, vice president assisted in making an inventory of the stock in the Shortridge store; they were there all the time the inventory was being made and part of the time Jens Nelson and Carl Krist the other directors were present. A written list was made in duplicate, one being given to Mr. Shortridge and one to the Peoples Mercantile Corporation. A corporation seal and a book of certificates of stock was procured, and is still in the possession of the defendant, Amos Melin.

At the time of the purchase of the Shortridge stock of goods, and the payment therefor with said notes, Shortridge gave the Peoples Co-operative Mercantile Company a receipt for the collateral notes which receipt contains the note in suit. In his answer, the defendant alleges as a defense that the note sued on was given to purchase stock in the Peoples Co-operative Mercantile Company, and that said Mercantile Company was never organized, that the defendant never received his stock, and that there was no consideration for the note. During the trial the defendant on leave of court amended his answer, alleging

that at the time of the execution of the note the person taking said note made representation to the said defendant, that said note would not become effective or be enforced, unless seventy-five members were procured. Karl Krist, a witness for the defendant, testified, that at the organization meeting, Mr. Dahl was present and asked, Mr. Shortridge and Mr. Gerard, "In case any of these people made settlement for subscribed stock in case they did not get the 75 or better members if they would be held liable," and both Mr. Shortridge and Mr. Gerard said not. Further testimony was excluded on the ground, that no foundation had been laid for such testimony, for the reason, that there was no evidence to show that the plaintiff at the time he purchased the note for full value, knew that the petition for the corporation had not received seventy-five signers.

At the close of plaintiff's case the defendant moved for a directed verdict, and the defendant's counsel moved for a directed verdict stating "without consenting to make this a court case the defendant moves the court to instruct the jury to return a verdict in favor of the defendants on all the ground set forth in a motion for a directed verdict at the close of plaintiff's case." The grounds being that the corporation had not been organized, and that the delivery of the note was conditional. After the motion was made the court directed the verdict for the plaintiff and said: "The court being of the opinion that the undisputed evidence shows that the plaintiff bank is a holder for value before maturity of the note in question without notice, the court directs you to find a verdict in favor of the plaintiff for the sum of $200 with interest on the same at ten per cent from the sixth day of November, 1920." Judgment having been duly entered thereon the defendant appeals, and it is his contention that the plaintiff is not entitled to recover on the collateral note in suit, for the reasons, first, that the corporation never was organized, and second, that the note was given upon the condition that it was not to be enforceable unless seventy-five members joined the organization.

It is conceded that articles of incorporation were never issued, and it is undisputed that there was an organization that elected officers, and directors, that the stock of goods in the store was inventoried, that the defendant was present all the time; the value of the goods was read off to him, and he put it down in a book; that the goods were

of the approximate value of $3,000, the approximate amount of the four notes given to Shortridge for the goods; that the defendant signed the notes as secretary of the corporation, knew that the notes were executed and delivered together with collateral notes to Shortridge in payment of said stock.

From these facts, if. the notes were delivered upon the condition that they were not to be enforceable unless seventy-five members signed, that condition was waived by the defendant using the notes to buy and operate the store. There is no merit to defendant's contention that the corporation had never been completed by filing articles of incorporation and certificate procured from the secretary of state. It was not the plaintiff's fault that the articles of incorporation had not been filed and the certificates procured; that was the business of the incorporators who had completed the corporation in all particulars, except, that one thing.

The judgment of the district court is affirmed.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.